UNITED STATES of America, Appellee,

v.

Harold G. WHITE, Appellant.

No. 84–1331.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1984.

Decided Oct. 12, 1984.

Rehearing and Rehearing En Banc Denied Nov. 14, 1984.

John H. Quinn, III, St. Louis, Mo., for appellant.

Robert T. Haar, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

Harold G. White, the Sheriff of Marion County, Missouri, appeals his jury conviction of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and two counts of perjury before a grand jury, in violation of 18 U.S.C. § 1623. White claims that an admittedly illegal wiretap, placed by state authorities, tainted the federal indictment and proceedings against White. We find the evidence against White had a source independent of the constitutional and statutory violations, therefore we affirm the convictions.

Rey Orta was a suspected drug dealer in Marion County, Missouri. In the spring of 1983 Orta resided in Palmyra. A number of law enforcement agencies were interested in investigating and prosecuting Orta. Between April 2–15, 1983, the Palmrya Police and two state troopers, with the aid of a friend at the local telephone company, tapped Orta's telephone. The tap was instituted without judicial authority and all parties admit its illegality. *See* 18 U.S.C. § 2510–2520 (1982). The tap confirmed Orta was dealing marijuana. In addition, two calls from defendant White were intercepted.

At the time of the calls, White was the sheriff of Marion County and had held that post for seven years. The heart of the factual dispute was whether White conspired with Orta to distribute marijuana, as the government claimed, or whether, as White claimed, he was conducting an undercover operation against Orta. At trial, the jury concluded there was an illegal conspiracy.

On or about April 12, Major C.E. Fisher of the Missouri State Highway Patrol became aware of the illegal tap and ordered it stopped immediately. Subsequently, the Drug Enforcement Administration (DEA) and FBI were contacted and informed of the illegal wiretap, the drug dealer, and a possibly corrupt sheriff. DEA already had a file on Orta and had previously attempted to investigate him. On April 19, while the FBI began investigating the wiretapping, DEA undertook intensive surveillance of Orta's home. The FBI sealed the wiretap recordings and state involvement in the investigation of Orta ceased. Although DEA's supervisory agent, Henry Pyla, knew of the wiretap and information

gained from it, the agent in charge of surveillance, Timothy Brunholtz, was unaware of the wiretapping.

Orta returned from Texas with a load of marijuana on April 20. The DEA team observed him meeting various people in an alleyway and abandoned gas station in Palmyra. The meetings had all the indicia of drug transactions. Finally, in the city park, the agents observed Orta transferring two large bags from a car he was driving to another party's van. The DEA team, believing they had probable cause, stopped the van and the car, arrested Orta, and conducted a search. Approximately twenty pounds of marijuana were found in the bags. Orta was given his *Miranda* rights and Agent Brunholtz, in keeping with his regular practice, asked Orta if he would cooperate with the investigative authorities. Orta indicated that he had information about Sheriff White and would provide it if he received assurances he would not be prosecuted. That evening the United States Attorney decided not to prosecute Orta in exchange for his cooperation in an investigation of Orta's sources of supply and Sheriff White.

White was eventually indicted by a grand jury for conspiracy to distribute marijuana and perjury in connection with his testimony before the grand jury. The government's principal witness at trial was Orta. On appeal, White asserts that both the indictment and Orta's testimony were a direct result of the illegal wiretap. White asks that the indictment be dismissed or Orta's testimony be stricken. White also complains that he was not informed of the illegal wiretap until after the indictment. Furthermore, White claims the government introduced evidence from the wiretap to the grand jury in violation of 18 U.S.C. § 2515 (1982). Finally, White asserts that the statements he made to the grand jury which formed the basis of the perjury charges were not material.

■ There is no question the wiretapping by state officials violated both the fourth amendment and 18 U.S.C. § 2511. The exclusionary rule, first employed in

*Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), prohibits the use of evidence obtained in violation of the fourth amendment. Furthermore, evidence derived from illegally obtained evidence is generally inadmissible. *Nardone v. United States*, 308 U.S. 338, 340–41, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939). However, evidence obtained from a source independent of the misconduct is admissible. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920).

■ Although DEA had previously expressed some interest in Orta, the April 20, 1983 surveillance was triggered by the wiretapping activity of the state officials. However, the arrest of Orta was based on probable cause established by the DEA surveillance team, not the illegal wiretap. For this reason, the concerns expressed in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), about the admissibility of an arrestee's subsequent statements are not present. The valid arrest of Orta, independent of the wiretap, resulted in Orta becoming a government witness and initiated DEA's investigation of White.

Orta's cooperation with DEA and testimony at trial was voluntary and with full knowledge of his fifth amendment rights. *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), admonishes us to be wary of excluding freewill testimony of a live witness. It is arguable, despite DEA's previous knowledge of Orta, that the illegal wiretap led to his discovery as a witness against White. But the Supreme Court has noted "the illegality which led to the discovery of the witness very often will not play any meaningful part in the witness' willingness to testify." *Ceccolini*, 435 U.S. at 277, 98 S.Ct. at 1060. This is such a case. We hold that the evidence used by DEA to indict and convict White arose independently of the wiretap. For this reason the indictment was not tainted by the fourth amendment violation

and Orta's testimony was properly admitted at trial.

■ We have examined White's other claims and find them without merit. The government was under no duty to disclose the existence of the illegal wiretapping to White before he was indicted. It does not appear that the government disclosed any information from the wiretaps to the grand jury. We also find that the statements to the grand jury which formed the basis of the perjury charges were directly relevant and material to the grand jury's investigation.

The judgment of the district court is affirmed.