UNITED STATES of America, Appellee,

v.

Brian James WATSON, Appellant.

No. 90–2989.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1991.

Decided Oct. 24, 1991.

Donald R. Cooley, Springfield, Mo., for appellant.

Richard E. Monroe, Springfield, Mo., for appellee.

Before FAGG and BEAM, Circuit Judges, and DOTY,* District Judge.

BEAM, Circuit Judge.

Brian James Watson was indicted for various violations of the currency transaction reporting requirements contained in 31 U.S.C. §§ 5324(2), 5322(b). After the district court denied a motion to suppress evidence, Watson entered conditional pleas of guilty, as provided by Fed.R.Crim.P. 11(a)(2), to two of the six counts in the indictment. Each count charged Watson with causing a false currency transaction report (CTR) to be filed by using the alias Douglas P. Ginter and a fictitious social security number. The district court sentenced Watson to 15 months' imprisonment and fined him $12,000. Watson appeals the denial of his motion and his fine. We affirm.

## I. BACKGROUND

On June 28, 1988, Deputy Sheriff Lonzo Bradwell of Oregon County, Missouri, acquired a warrant to search Watson's residence for marijuana and illegal weapons. Deputy Bradwell executed the warrant with the help of other officers, including Sergeant Loring of the Missouri Highway Patrol. The officers met Watson at the residence. Although the police found three to ten marijuana seeds in a car parked on the property, they did not discover any contraband or illegal weapons in the house. While searching the house, however, Sergeant Loring and others discovered and photographed or copied down information concerning various bank accounts in the name Douglas Ginter.

After the search, a federal grand jury and the Internal Revenue Service (IRS) began to investigate Watson's financial activities. Special Agent Susan Prine of the IRS's Criminal Investigation Division led the investigation. Although Agent Prine had access to Sergeant Loring's report, the only information from the report used by

---

* The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minneso- ta, sitting by designation.

the jury to subpoena bank records was Watson's name, the name Douglas Ginter,[1] and the names of various banks. The grand jury did not use any of the account numbers contained in the report. Moreover, none of the documents copied during the search were part of the IRS's investigative case file or a potential trial exhibit. All of the documents in the file were discovered through the independent investigation of the grand jury and the IRS. The false CTRs, in particular, were government records in the IRS's possession.

Watson twice moved to suppress all documents and testimony concerning his deposits and withdrawals of currency in various financial institutions. The first motion was denied without prejudice. At the hearing on the second motion, Watson argued that the evidence was the poisonous fruit of an illegal search. In response, the government challenged Watson's standing, and asserted good faith and attenuation. The district court denied Watson's motion based solely on good faith.

## II. DISCUSSION

### A. *Standing*

Before considering the merits of Watson's assertion that the search of his residence was unconstitutional, we must first address the government's argument that Watson lacks standing to challenge the search. The government contends that Watson had no legitimate expectation of privacy in the house, because he purchased the property under a fictitious name. Legal ownership of a house, however, is not necessary to have a legitimate expectation of privacy in it; present dominion or control is sufficient. *See Rakas v. Illinois*, 439 U.S. 128, 149, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). The only evidence on this issue supports the conclusion that Watson resided at the house and had control over it. This is sufficient to provide Watson with standing to challenge the search.

### B. *Motion to Suppress*

Watson argues that the district court improperly denied his motion to suppress evidence concerning his financial transactions because the evidence was the fruit of an illegal search.[2] We find the legality of the records search questionable and, for the purposes of our analysis, we will presume that the search was indeed illegal. Nonetheless, we hold that on the facts of this case, the evidence which Agent Prine developed for trial is sufficiently attenuated from the presumably illegal search so as to purge the evidence of any possible taint.

The attenuation doctrine is a well-established exception to the exclusionary rule. A mere causal connection between information gained during an illegal search and evidence prepared for trial does not require automatic exclusion of the evidence. "[S]uch connection may have become so attenuated as to dissipate the taint." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). Moreover, in determining whether exclusion is proper, the court does not simply inquire whether the evidence would have been discovered "but for" the illegal conduct. "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963) (quoting Maguire, *Evidence of Guilt* 221 (1959)). The mere fact that information gained during an illegal search gives rise to a subsequent, separate investigation of an individual does not necessarily taint the later investigation. *E.g., United States v. Bacall*, 443 F.2d 1050, 1061 (9th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971);

---

**1.** Agent Prine also investigated other names that Watson had used as aliases, but the record fails to clarify whether Agent Prine learned about these names from Sergeant Loring's report.

**2.** Watson contends that the search warrant's supporting affidavit contained significant factual inaccuracies and that the search itself exceeded the warrant's scope. We express no opinion as to either of these claims.

*United States v. Friedland,* 441 F.2d 855, 861 (2d Cir.), *cert. denied,* 404 U.S. 867, 92 S.Ct. 143, 30 L.Ed.2d 111 *and* 404 U.S. 914, 92 S.Ct. 239, 30 L.Ed.2d 188 (1971); *cf. United States v. White,* 746 F.2d 426, 428 (8th Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). Furthermore, if the information merely facilitates or shortens the subsequent investigation, it does not taint the investigation's results. *United States v. Falley,* 489 F.2d 33, 40 (2d Cir.1973).

■ The only information from Sergeant Loring's report that Agent Prine and the grand jury used in their investigation was Watson's name, the alias Douglas Ginter, and the names of certain banks. In all other respects, the investigation was completely separate and independent of the presumably illegal search and none of the materials that Agent Prine prepared for trial included evidence seized in the search.

■ Initially, we conclude that where a law enforcement officer merely recommends investigation of a particular individual based on suspicions arising serendipitously from an illegal search, the causal connection is sufficiently attenuated so as to purge the later investigation of any taint from the original illegality. A contrary conclusion would amount to granting the suspect "life-long immunity from investigation and prosecution." *Friedland,* 441 F.2d at 861. In such situations, the societal cost of imposing the exclusionary rule outweighs any deterrent effect. Furthermore, we find no basis to distinguish between a suspect's name and a potential alias. In the investigation of criminal activity, an alias is part and parcel of a suspect's name. The grand jury's use of Watson's name and the alias Douglas Ginter, therefore, did not taint the investigation.

The final issue is whether the use of the bank names by the grand jury and Agent Prine tainted the investigation. The question would be much closer were the bank names necessary to a successful investigation of Watson's financial activities. The bank names, however, merely facilitated the investigation. The grand jury and Agent Prine eventually would have discovered the key incriminating evidence against Watson, including the false CTRs, even without the bank names. The use of the bank names, therefore, did not taint the investigation. *See Falley,* 489 F.2d at 40.

## III. CONCLUSION

We have considered Watson's challenge to his fine and find it to be without merit. For the reasons stated above, the decision of the district court is affirmed.