STATE of Wisconsin, Plaintiff-Respondent,

v.

Kenneth SIMMONS, Defendant-Appellant.†

Court of Appeals

*No. 97–1861–CR. Oral argument June 2, 1998.—Decided July 1, 1998.*

(Also reported in 585 N.W.2d 165.)

†Petition to review denied.

On behalf of the defendant-appellant, there were briefs and oral argument by *Carl W. Chessir* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Carol B. Nawrocki,* assistant attorney general. There was oral argument by *Carol B. Nawrocki.*

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J. This case involves a search warrant of Kenneth Simmons' apartment which also authorized a strip search. The strip search directive of the warrant was based upon an unrelated incident five years before

when police learned that Simmons' modus operandi was to secrete illegal drugs between the cheeks of his buttocks. In 1992, this court held that the search conducted as part of the earlier incident was illegal. The question before us is whether our 1992 decision effectively prevents police from ever using the information gleaned from the illegal search in a subsequent and completely independent investigation. We hold that where the later investigation was not "prompted by" the information obtained during the earlier search, such information may be used by the police. We affirm the trial court's decision denying the motion to suppress.

In 1990, the Racine police received a tip from a confidential informant that Simmons was selling cocaine at a local tavern. The confidential informant also told the police that Simmons regularly secreted plastic bags of cocaine between the cheeks of his buttocks. Without securing a warrant, the police located and arrested Simmons. They brought him to the jail and strip searched him. They discovered a plastic bag containing numerous bindles of cocaine. In a previous opinion, we found that the search violated Simmons' Fourth Amendment rights because the confidential informant's tip was not corroborated in any way and we suppressed the evidence found during the strip search. *See State v. Simmons,* No. 96–2699-CR, unpublished slip op. (Wis. Ct. App. Jan. 22, 1992).

In 1995, Officer Robert F. Heckel of the City of Racine Police Department received a tip from a confidential informant that Simmons was selling rock cocaine from an apartment. This was apparently a different confidential informant than the one who gave the police the tip about Simmons' drug activity in 1990. Heckel then requested a search warrant. Specifically,

777

he requested authorization to search the apartment, its curtilage and all occupants, including "a strip search of and search of underclothing worn" by Simmons. In support of the request for a strip search, Heckel's accompanying affidavit stated that according to police records, Simmons was arrested in 1990 and "was found to be concealing Cocaine in a plastic bag stuffed between the cheeks of his buttocks completely up to his rectum." The affidavit did not mention that the strip search was subsequently found unconstitutional by this court or that the evidence was suppressed. Based on Heckel's affidavit, the magistrate issued the warrant.

The police executed the search warrant on February 2, 1995. Simmons and two other individuals were in the apartment, and Simmons was handcuffed and taken to a bedroom to be strip searched. To protect Simmons' privacy, the police placed sheets over the bedroom windows and a blanket was placed over the doorless entryway to the bedroom. Three police officers remained in the bedroom to conduct the search. The officers first asked Simmons if he had any drugs on his person. Simmons did not answer. The officers then advised Simmons that they were going to conduct a strip search. After pulling Simmons' trousers and underwear down to his knees, the officers asked Simmons to bend forward. Simmons complied, and all three officers observed a plastic bag about the size of a golf ball containing white chunky materials lodged between the cheeks of Simmons' buttocks. The bag was removed and Simmons was allowed to replace his clothing. Approximately 16 grams of cocaine was found

in the bag.[1] Also, about 1.4 grams of cocaine was discovered on a coffee table in the apartment.

The State initially charged Simmons with possession of over 15 grams of cocaine with intent to deliver, within 1000 feet of a school. The information was later amended to possession of between 5 but less than 15 grams of cocaine with intent to deliver, within 1000 feet of a school. Simmons challenged the search warrant as lacking probable cause and made a motion to suppress the evidence. He argued that the police could not rely upon information gained from a prior illegal strip search as the basis for their request to conduct the 1995 strip search. The trial court denied the motion. Simmons' motion to reconsider was also denied. Pursuant to a plea agreement with the State, Simmons then pled guilty to one count of possession of less than 5 grams of cocaine with intent to deliver. The trial court accepted Simmons' plea and sentenced him to twelve years in prison to run concurrent with an unrelated prison sentence imposed as a result of a parole revocation.

On appeal, Simmons again argues that "[t]he search warrant authorizing a strip search of [his body] was based on illegal information in violation of his fourth amendment rights and the evidence obtained from the strip search should have been surpressed." He does not challenge the validity of that part of the search warrant authorizing a search of the apartment, its curtilage and all occupants. We review de novo whether undisputed facts establish a constitutional violation.

---

[1] The trial court found that because there was no body cavity search the search did not violate § 968.255(3), STATS., when it was conducted by a person other than a physician, physician assistant or nurse.

*See State v. Street,* 202 Wis. 2d 533, 543, 551 N.W.2d 830, 835 (Ct. App. 1996).

We agree with Simmons that the warrant authorizing the strip search was based on information discovered during the earlier illegal search. Nonetheless, we conclude that under the facts of this case, the evidence is sufficiently attenuated from the earlier 1990 strip search as to purge any possible illegal taint.

The attenuation doctrine is a product of considerations underlying the exclusionary rule and the constitutional principles it is designed to protect. Not all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. The United States Supreme Court has "declined to adopt a "per se or 'but for' rule" that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest." *United States v. Ceccolini,* 435 U.S. 268, 276 (1978) (quoted source omitted). "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun v. United States,* 371 U.S 471, 488 (1963) (quoted source omitted). Evidence may be sufficiently distinguishable to be purged of the primary taint if "the causal connection between [the] illegal police conduct and the procurement of [the] evidence is 'so attenuated as to dissipate the taint' of the illegal action." *United States v. Fazio,* 914 F.2d 950, 957 (7th Cir. 1990) (quoted source omitted).

780

██
There is no litmus paper test a court can mechanically apply to determine whether there is an attenuated connection between the illegal conduct and certain derivative evidence. *See* 5 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.4(a), at 236 (3rd ed. 1996). However, the Supreme Court in *Brown v. Illinois,* 422 U.S. 590, 603–04 (1975), set forth several factors to guide courts in determining whether the causal chain is sufficiently attenuated so as to dissipate the taint of the illegal conduct: (1) the time elapsed between the illegality and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. In the final analysis, though, the determinative issue is whether the evidence came about from the "exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 488 (quoted source omitted).

The federal case of *United States v. Watson,* 950 F.2d 505 (8th Cir. 1991), illustrates this point. In that case, the state police conducted a search of Watson's home for illegal drugs and weapons. They discovered and photographed or copied information concerning various bank accounts under Watson's alias name. *See id.* at 506. The search was illegal, but the information about Watson's name, his alias and the names of certain banks was turned over to an agent in the IRS's Criminal Investigation Division. *See id.* at 506, 508. A grand jury indicted Watson, and he subsequently pled guilty to various violations of federal currency transaction reporting requirements. *See id.* at 506.

On appeal, Watson claimed that the evidence against him was the poisonous fruit of an illegal search. The court disagreed, stating: "The mere fact

that information gained during an illegal search gives rise to a *subsequent, separate investigation* . . . does not necessarily taint the later investigation." *Id.* at 507 (emphasis added). "[I]f the information merely facilitates or shortens the subsequent investigation, it does not taint the investigation's results." *Id.* at 508. The court observed that none of the documents photographed or copied were part of the IRS's investigative case file or a potential trial exhibit. *See id.* at 507. All of the documents in the case file were discovered through a separate and independent IRS investigation. *See id.* Under these facts, the court concluded that the attenuation doctrine permitted the police to recommend an investigation of a particular individual based on suspicions arising from an illegal search. *See id.* at 508. The causal connection between the search and subsequent investigation was sufficiently attenuated as to purge the later investigation of any taint from the original illegality. *See id.* The crux of the court's decision rested on its determination that a contrary conclusion would not serve the deterrent effect of the exclusionary rule and would amount to granting the suspect "life-long immunity from investigation and prosecution." *See id.* (quoted source omitted).

■

A consideration of the factors set forth by the Supreme Court in *Brown*, the ratio decidendi of *Watson* and the rationale underpinning the exclusionary rule itself convinces us that the evidence found in the 1995 search is sufficiently attenuated from the earlier illegal search as to purge the evidence of any possible taint. Five years elapsed between the illegal search and the strip search which uncovered the evidence in this case. Although the length of time is of no real significance, it serves to highlight the crucial fact that we are not

confronted with a situation in which the police conducted an investigatory or confirmatory search in which the illegally obtained information either prompted the officer's decision to seek a warrant or was presented to a magistrate and affected his or her decision to issue a warrant. *See Murray v. United States,* 487 U.S. 533, 542–43 (1988). Instead, we are faced with a situation in which the police initiated the 1995 investigation and sought the search warrant only *after* they received *new information* from an informant that Simmons was selling cocaine from an apartment. The earlier illegal search of Simmons and discovery of cocaine did not prompt their decision to investigate Simmons; it was a separate and independent investigation. The initial decision to investigate Simmons and to seek a search warrant was therefore based on new information and new intervening circumstances.

While Simmons apparently argues that but for the earlier illegal search the police would not have sought authorization to strip search him, *Wong Sun* and its progeny explicitly teach that the evidence in question is not to be excluded simply because there is a "but for" relationship between it and the primary illegality. Given the facts of this case, we cannot subscribe to Simmons' viewpoint that the exclusionary rule demands that we suppress the evidence. In fact, this case is even stronger than *Watson* on the issue. In *Watson,* a direct causal connection existed between the illegal search and the subsequent, separate investigation. The police who conducted the illegal investigation actively gave their information to the IRS. Here, there is no direct connection. Only after the police were tipped off as to Simmons' illegal activity did they comb their files and discover his modus operandi of secreting cocaine between the cheeks of his buttocks. The illegal

information merely facilitated the police in their subsequent investigation; it was not the progenitor of the new investigation. *See Watson,* 950 F.2d at 508 (information that merely facilitates investigation does not necessarily taint the investigation's results).

Justice Lewis F. Powell once wrote the following: "The notion of the 'dissipation of the taint' attempts to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost." *Brown,* 422 U.S. at 609 (Powell, J., concurring). We think the Justice's statement is relevant here. We doubt that police officers intentionally conduct illegal searches in the anticipation that any information they discover may be of value years later in a separate and unforeseen investigation. Under the circumstances of this case, the police did not exploit the earlier illegal search and excluding the evidence would not have the effect of deterring any future illegal police action. Suppressing the evidence under the exclusionary rule would simply amount to granting Simmons "life-long immunity from investigation and prosecution." *See Watson,* 950 F.2d at 508 (quoted source omitted). In sum, the connection between the illegal search and the evidence discovered during the legal search five years later was "so attenuated as to dissipate the taint." *See United States v. Fazio,* 914 F.2d 950, 957 (7th Cir. 1990) (quoted source omitted). We therefore affirm the trial court's order denying the motion to suppress.[2]

---

[2] The State also raised "inevitable discovery" and "independent source" arguments as alternative reasons for affirming. We do not reach those issues.

*By the Court.*—Judgment affirmed.