STATE of Wisconsin,
Plaintiff-Appellant,

v.

Eric Dwayne ROGERS,
Defendant-Respondent.†

Court of Appeals

*No. 2007AP1850–CR. Submitted on briefs September 19, 2008.
—Decided November 12, 2008.*

2008 WI App 176

(Also reported in 762 N.W.2d 795.)

† Petition to review denied 1/14/09.

60

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *J.B. Van Hollen*, attorney general, and *James M. Freimuth*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mark D. Richards* of *Richards & Hall, S.C.*, of Racine.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. This case presents two novel issues, at least in Wisconsin. The first issue deals with a situation where the affidavit supporting the search warrant was correct, but the warrant itself identified the wrong vehicle as the subject of the search because the officer used a prior, unrelated search warrant to help him draft this one, and in so doing, carelessly lifted information from the old warrant and put it into the new. The second issue examines the law when police wait *inside* a home while a search warrant is being obtained to search it, rather than waiting outside the home. We hold that the search warrant for the vehicle was valid because the issuing magistrate obviously based its decision on the fact that the executing officer had personal knowledge of the car to be searched and his attached affidavit, correct on its facts, illustrated

that personal knowledge. We further hold that entry into the home, under *these* facts, was illegal, but the illegality was attenuated by knowledge that two hours passed, no search for contraband took place during the entry, and the eventual search of the residence was pursuant to a valid search warrant. We reverse and remand with directions for further proceedings not inconsistent with this opinion.

¶ 2. A Racine police investigator learned from a confidential informant that a "black male in his late 30's" known as "Eric" was selling cocaine "from a white Cadillac Deville four door with Wisconsin license plate [] 526KHR." Previously, the confidential informant had provided information to the Racine police department that led to at least ten arrests in the last year. The investigator also learned that the Wisconsin DOT issued that license plate number to an Eric D. Rogers, date of birth, November 21, 1969, residing at 1200 Superior St. in Racine. The car was a white 1998 Cadillac DeVille four door. This information built on additional evidence that the investigator had learned about Rogers over the last month from the police department's own records and the investigator's own personal contacts and knowledge of Rogers, his car and his residence. The investigator put this information in an affidavit and attached it to his search warrant application on December 4, 2006.

¶ 3. Pursuant to this application, the magistrate issued a search warrant that day for Rogers' car. The search warrant expressly "incorporated by reference" the investigator's affidavit. The affidavit correctly identified Rogers' car all three times. On the face of the search warrant, however, the investigator incorrectly identified Rogers' car. The investigator drafted the warrant by typing over the relevant parts of an old

search warrant. In the first paragraph the warrant identified the car as a "1996 Ford Crown Victorian four door, with a Wisconsin Registration plate of 484LGS." In the next paragraph, the warrant identified the car as a "WHITE 1998 CADILLAC DEVILLE FOUR DOOR with a Wisconsin license plate of 425KHR."[1] Nowhere on the face of the warrant is Rogers' car correctly identified.

¶ 4. Later that night, two other police officers pulled Rogers over in his DeVille because they knew about the search warrant. These officers also knew Rogers and his car from prior contacts or observations. The officers identified Rogers, the lone occupant, and the Cadillac DeVille, and advised him of the search warrant. Then they removed and cuffed Rogers, and patted him down. During the pat down, the officers found more than $1800 in currency and two cell phones.

¶ 5. Shortly thereafter, a Racine police sergeant arrived and read the warrant to Rogers. The sergeant noted the incorrect information, but the officers decided the warrant was still valid based on the correct information in the affidavit. While searching the car, the officers seized nine grams of cocaine. During the stop, the officers also saw Rogers' brother and others making phone calls, prompting them to secure Rogers' residence to prevent the destruction of evidence while the investigator got another search warrant.

¶ 6. The officers proceeded to Rogers' residence and conducted a "protective sweep." Rogers' mother met the officers at the door and silently cooperated with their entry after learning that a search warrant was being written. Rogers' mother is a seventy-nine-year-old woman who requires a walker and an oxygen tank. She testified that she did not give the officers any verbal or other indication that they could enter the residence. The

---

[1] The correct license plate number is 526KHR.

officers told her that "they had to come there to stay there and wait for the warrant." Upon entering, the officers looked for other occupants throughout the residence. At that time no one else was home. The officers proceeded to wait inside the residence and watch their television show for about two hours. During that time, Rogers' brother appeared, and the officers monitored all of his movements.

¶ 7. Shortly thereafter, the police executed the second warrant and searched Rogers' residence. The police seized additional evidence including 143.5 grams of cocaine and two and one-half bags of marijuana.

¶ 8. On December 5, 2006, the State charged Rogers with five drug crimes based on these two searches and seizures. Rogers filed a motion to suppress all evidence obtained from these searches.

¶ 9. At the suppression motion hearing, the trial court concluded that the first search warrant was invalid and that the second search was pursuant to an unlawful entry. The trial court held that the two mistakes on the face of the warrant rendered the warrant invalid and the stop and search of Rogers' car and person unlawful. The trial court also held that the police unlawfully entered and waited inside Rogers' residence without a warrant or exigent circumstances, which rendered the subsequent search unlawful.

¶ 10. On appeal, the State argues that the search warrant for Rogers' car was valid because the mistakes constitute "technical irregularities" within the meaning of WIS. STAT. § 968.22 (2005–06)[2] and that evidence seized from Rogers' residence is attenuated from their prior entry, even if the entry was unlawful.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

## Standard of Review

██

¶ 11. The constitutional reasonableness of a search and seizure is a question of law. *State v. Nicholson*, 174 Wis. 2d 542, 545, 497 N.W.2d 791 (Ct. App. 1993). Whether probable cause and exigent circumstances exist are also both questions of law subject to independent, de novo review. *See State v. Kiper*, 193 Wis. 2d 69, 79–80, 532 N.W.2d 698 (1995); *State v. Faust*, 2004 WI 99, ¶ 9, 274 Wis. 2d 183, 682 N.W.2d 371.

## Search of the Vehicle

██

¶ 12. The Fourth Amendment requires that search warrants particularly describe the place to be searched and the person or things to be seized. *Nicholson*, 174 Wis. 2d at 546 (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). This requirement is intended to prevent a general or wide-ranging exploratory search and to ensure that the search is carefully tailored to its justification.[3] *Id.* To satisfy this intent, the particularity requirement compels search warrants to describe the intended place and items sought so that "the searcher [can] reasonably ascertain and identify the things which are authorized to be seized" at the place intended to be searched. *State v. Noll*, 116 Wis. 2d 443, 450–51, 343 N.W.2d 391 (1984).

---

[3] The objectives of this particularity requirement are three-fold: "(1) it prevents general searches, (2) it prevents the issuance of warrants on less than probable cause, and (3) it prevents the seizure of objects when the warrant describes different objects." *State v. Nicholson*, 174 Wis. 2d 542, 546 n.2, 497 N.W.2d 791 (Ct. App. 1993).

¶ 13. In *Hill v. California*, 401 U.S. 797, 804 (1971), the United States Supreme Court held that the touchstone of reasonableness under the Fourth Amendment is sufficient probability, not certainty. A warrant containing incorrect information still passes constitutional muster if "there [i]s no reasonable probability that the wrong premises would be searched." *See People v. Rodriguez*, 680 N.Y.S.2d 2 (N.Y. App. Div. 1998). This prevents the suppression of evidence because of technical irregularities that do not affect the defendant's substantial rights. *See* WIS. STAT. § 968.22. In *Rodriguez*, the court held that there was no reasonable probability when (1) the affidavit in support of the warrant application correctly listed the address three times and (2) the executing officer applying for the warrant had personal knowledge of the place to be searched. *Rodriguez*, 680 N.Y.S.2d at 2.

¶ 14. In *Nicholson*, 174 Wis. 2d at 547–49, we held that the executing officer's personal knowledge and the presence of correct information overcame any incorrect information in the warrant. There, the police's confidential informant personally showed the police officer Nicholson's apartment building and pointed out the particular apartment and how to gain access to it. *Id.* at 546. This provided the officer with personal knowledge of the place to be searched. *Id.* The search warrant and affidavit described the physical location correctly, but provided the wrong property address.[4] *Id.* The officer did not know that the warrant inaccurately described the premises until he began executing it. *Id.* at 547–48. Upon learning of the error, the officer continued the

[4] The officer identified the property address as 1512 State Street instead of 1510 State Street. *State v. Nicholson*, 174 Wis. 2d at 546.

search because he still believed he was in the right apartment, "(1) it was the apartment pointed out to [the police officer] by the informant, (2) it was the apartment for which the officers sought the warrant, and (3) it was the apartment to which the warrant was intended to apply." *Id.* at 548 (emphasis omitted). We held that these facts ensured that the search complied with the warrant and overcame any technical irregularity in the warrant itself without affecting any substantial right of Nicholson. *Id.* at 548–49.

¶ 15. In this case, the executing officer had personal knowledge and the officer attached and incorporated a correct affidavit. The affidavit correctly identified Rogers' car three times, describing the correct color, make, model, and style of the car along with the correct license plate. This information was based on the executing officer's personal knowledge from prior encounters with Rogers and his car and from the confidential informant.

¶ 16. The face of the warrant, however, identified Rogers' car incorrectly both times. First it identified a completely different car, then the correct car with two incorrect numbers in the license plate. The executing officer stated that the mistakes were a scrivener's error from copying the information from an old search warrant.

¶ 17. We hold that the mistakes on the face of the warrant are a technical irregularity under Wis. Stat. § 968.22 and that the warrant meets the Fourth Amendment standard of reasonableness. When the executing officer has personal knowledge and attaches and incorporates an affidavit with the correct information, a magistrate may conclude that there is no reasonable probability that the officers will search the wrong pre-

mises. *See State v. Gralinski*, 2007 WI App 233, ¶¶ 15–16, 306 Wis. 2d 101, 743 N.W.2d 448 (courts review the magistrate's inferences, not the police officer's, though the magistrate may consider an officer's special experience or knowledge). Accordingly, the officers' seizure of cocaine evidence from Rogers' car and their subsequent search of Rogers' person were pursuant to a valid search warrant.

### *Search of the Home*

¶ 18. A warrantless police entry and search of a private residence is valid "where the government can show both probable cause and exigent circumstances that overcome the individual's right to be free from government interference." *State v. Hughes*, 2000 WI 24, ¶ 17, 233 Wis. 2d 280, 607 N.W.2d 621. Probable cause requires that the officers have a "fair probability" that criminal evidence will be found in a particular place. *Id.*, ¶ 21. To prove exigent circumstances, the State must objectively show that an "officer, under the facts as they were known at the time, would reasonably believe that delay in procuring a search warrant would gravely endanger life, risk destruction of evidence, or greatly enhance the likelihood of the suspect's escape." *Id.*, ¶ 24.

¶ 19. In this case, the police entered Rogers' residence after seizing contraband from his car and person and then seeing Rogers' brother and others at the scene talking on their phones. This triggered the officers' entry into Rogers' residence, upon the silence of Rogers' elderly mother, and their protective sweep of the residence. The officers did not find or seize any contraband during their protective sweep. Still, they remained in the residence

for two more hours, monitoring the inhabitants' movements, but not otherwise searching the residence. Then, after the warrant arrived, the officers searched Rogers' residence and seized contraband.

¶ 20. We hold that the initial entry and protective sweep of Rogers' residence was an unlawful, warrantless entry because no exigent circumstances were present.[5] The officers' hunch, after seeing Rogers' brother and others on their cell phones, that someone would destroy evidence at Rogers' residence was just that—a guess that someone might be calling Rogers' home. The officers actually had no idea who Rogers' brother or the other persons were calling, and probably to this day, do not know for sure who they were calling. Nonetheless, the officers figured that one of them might be calling the residence, that more drugs might be located in that residence and that they better get over to the residence and secure it before the drugs disappeared. This is not enough information to qualify as exigent circumstances. To constitute exigent circumstances, the officers would have needed knowledge that someone would in fact destroy evidence at a specific place. They would have had to actually overhear one of those phone calls, and hear that one or more of them was attempting to get to Rogers' residence before the police or was directing someone to destroy evidence at that residence. Entering Rogers' residence based on just that guess, after confronting an elderly woman who needs oxygen and uses a walker, and seeing no other person in the residence, was not warranted. The officers could have used a less intrusive method by control-

---

[5] Because we hold that the officers did not have any exigent circumstances, we need not decide whether they had probable cause.

ling who entered and exited the residence without actually entering and remaining in the residence. *See Illinois v. McArthur*, 531 U.S. 326, 336 (2001).

¶ 21. Still, "evidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint.' " *Segura v. United States*, 468 U.S. 796, 805 (1984) (citation omitted); *see State v. Simmons*, 220 Wis. 2d 775, 780, 585 N.W.2d 165 (Ct. App. 1998). Three factors are relevant to our inquiry: (1) the temporal proximity of the unlawful entry to the search, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. *See State v. Walker*, 154 Wis. 2d 158, 187–88, 453 N.W.2d 127 (1990). Importantly for this case, when the police have an "independent source" for their discovery, such as a warrant based on wholly unconnected information, the evidence seized is not to be excluded. *Segura*, 468 U.S. at 805, 814.

¶ 22. Based on the circumstances of the entire evening, the State has met all three factors. The officers' good police work and prior drug seizure led them to apply for an additional search warrant based on that contraband. Then the officers waited two hours to search the residence with a valid warrant, albeit while waiting inside watching television. True, they did also perform a protective sweep, but they did not base their search or warrant on the unlawful entry or protective sweep. Instead, the officers obtained the search warrant for Rogers' residence based entirely on an independent source—their prior search and seizure of Rogers' car and person. Thus, the search of Rogers' residence was sufficiently attenuated from the unlawful entry to permit the

73

search and seizure of evidence of unlawful drug dealing. Had the search been conducted as a result of the illegal entry or had the protective sweep been just a pretext for a search for contraband, or had the police used information from the illegal entry to obtain the search warrant, this would be a different case.

¶ 23. Because we find that the evidence seized from Rogers' car, person and residence was pursuant to valid search warrants, we reverse the trial court's suppression order. We remand for further proceedings not inconsistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.