COURT OF APPEALS
DECISION
DATED AND FILED

May 18, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2020AP480-CR**
**2020AP481-CR**

**STATE OF WISCONSIN**

Cir. Ct. Nos. 2016CF2091
2016CF4601

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

  V.

CORINTHEUS JABAR GANT,

  DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS, Judge. *Affirmed*.

Before Brash, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in** WIS. STAT. RULE 809.23(3).

¶1     PER CURIAM.  Corintheus Jabar Gant appeals his judgments of conviction entered after he pled guilty to four counts of intimidation of a witness and one count of possession of a firearm by a felon.  He also appeals the order of the trial court denying his motion for postconviction relief.

¶2     On appeal, Gant argues that the evidence that police officers found at his residence pursuant to a search warrant should be suppressed because the officers' initial entry prior to obtaining the warrant was not justified.  Gant also seeks to withdraw his pleas to the witness intimidation counts on the ground that the trial court accepted the pleas without finding a sufficient factual basis for them.  We affirm.

## BACKGROUND

¶3     In May 2016, Gant was arrested and charged with the armed robbery of a gas station on West Fond du Lac Avenue in Milwaukee.  The gas station attendant, M.S., stated that he recognized the robber, later identified as Gant, as a frequent customer of the gas station.  M.S. saw Gant flee the gas station after the robbery in a red minivan, and was able to provide police with a partial license plate.

¶4     A Milwaukee police officer responding to the call observed a red minivan with a license plate that aligned with the partial plate provided by M.S., traveling at a high rate of speed on North 44th Street.  The officer saw the minivan stop at a residence on West Medford Avenue, and saw Gant flee the vehicle and go into the house.  Gant was ordered by police to exit the residence; at first he did not comply, and when he eventually did come outside, he had to be tased to be taken into custody.

¶5      Police subsequently executed a search warrant at the residence, and recovered six firearms: one was found in a dresser drawer in one of the bedrooms and the other five were found in the basement. Gant was also charged with possession of a firearm by a felon along with armed robbery.

¶6      Gant filed a motion to suppress the evidence discovered at his residence. He argued that after the police had taken him into custody and placed him in a squad, they entered his residence to "h[o]ld the scene" until the search warrant was obtained. He asserted that this physical entry into his home prior to obtaining the warrant was nonconsensual and unreasonable, and therefore in violation of his Fourth Amendment rights.

¶7      A hearing was held on the motion in November 2017. One of the responding officers testified that they entered Gant's home after taking him into custody in order to "secure the residence," to ensure there were no other armed "confederates" inside who were destroying evidence related to the armed robbery. The officer stated that they had seen "three or four" teenagers in the house through a window; police ordered them to unlock the door so that they could perform the protective sweep. They eventually complied, although the officer testified that they were "being uncooperative" and "yelling things" at the officers. They were detained inside the house while officers proceeded with the protective sweep.

¶8      The officer further testified that during the protective sweep, they were "looking anywhere a person may be hiding that might be dangerous, armed with a firearm, or if people could be hidden." Therefore, they only searched places where "somebody could be standing or hiding," such as in closets or under beds. The officer stated they did not look in places like cupboards or cabinets during the protective sweep.

¶9 Gant's wife, Portia Johnson, also testified at the hearing. She stated that the teenagers in the house were her children; their ages at the time were 21, 19, 16, and 15 years old. Johnson testified that she returned to the residence after Gant had been taken into custody, and that she ran to the back door to get into the house but the officers would not let her enter. She stated that she was "screaming and yelling" and that the police initially handcuffed her because she was "irate[.]" Johnson said that after approximately a half hour, she was released from the handcuffs and allowed to enter the home and join her children in the living room. Johnson further testified that she did not consent to a search of the residence.

¶10 Based on those circumstances, the trial court found that the protective sweep was justified, due to the "issues of potential destruction of evidence as well as officer safety [that] had to be acted upon quickly." The court therefore denied the motion to suppress.

¶11 In the meantime, the State charged Gant with felony intimidation of a witness in October 2016. M.S. told police he had received "multiple telephone calls" from Gant, who was being held at the House of Corrections. M.S. stated that Gant repeatedly told him not to come to court for the armed robbery case. The State subsequently amended the information to add three additional counts of felony intimidation relating to the calls Gant made to M.S. The State also added three more counts of possession of a firearm by a felon against Gant.

¶12 Gant subsequently entered into a plea agreement where he agreed to plead guilty to one of the counts of felon in possession of a firearm, and all four counts of felony intimidation of a witness. At the plea hearing in January 2018, Gant, through counsel, stipulated that the facts in the complaints could be used to establish a factual basis for his pleas. However, the complaint for the felony

4

intimidation count listed only one call from Gant to M.S. The State noted that it would "get into the fact[s]" of all the intimidation counts "later[.]"

¶13    At the subsequent sentencing hearing in February 2018, the State explained that Gant had used the telephone PINs for other inmates numerous times to call his wife or daughter and have them initiate a three-way call with M.S. Additionally, the remaining counts of felon in possession of a firearm and the armed robbery charge were dismissed but read in for purposes of sentencing. The trial court sentenced Gant to three years of initial confinement and three years of extended supervision for the felon in possession of a firearm count, and one year and six months of initial confinement and two years of extended supervision for each count of felony intimidation of a witness. The sentences were imposed to run consecutively.

¶14    Gant filed a postconviction motion in June 2019. He sought to withdraw his guilty pleas on the ground that the trial court failed to establish a factual basis for three out of the four counts of felony intimidation of a witness, because the complaint which served as the factual basis for those counts contained facts regarding only one call to M.S. The trial court rejected Gant's claim, stating that the record reflected that under the totality of the circumstances, he had assented to the facts as set forth in the complaint and by the State at the sentencing hearing. Therefore, the court found that plea withdrawal was not warranted. This appeal follows.[1]

---

[1] Gant's postconviction motion also included a claim of ineffective assistance of counsel relating to an alleged improper guarantee regarding sentencing made by trial counsel. The trial court granted an evidentiary hearing on this issue, but subsequently denied that part of the motion. Gant does not pursue that issue on appeal.

## DISCUSSION

*Suppression of Evidence*

¶15 We first address Gant's argument that his motion to suppress the evidence seized at his home should have been granted on the ground that the protective sweep done by police after he was in custody was not reasonable. In our review of a motion to suppress, we apply a two-step standard of review: (1) we first review the trial court's findings of fact, and will uphold them unless they are clearly erroneous; and (2) we then "review the application of constitutional principles to those facts *de novo.*" ***State v. Eason***, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.

¶16 The constitutional principles regarding searches and seizures are set forth in both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution. *See* ***State v. Secrist***, 224 Wis. 2d 201, 208, 589 N.W.2d 387 (1999). Searches performed without a warrant are presumed to be unconstitutional; however, exceptions have been established and recognized by both the United States Supreme Court and the Wisconsin Supreme Court. ***State v. Lee***, 2009 WI App 96, ¶¶6-7, 320 Wis. 2d 536, 771 N.W.2d 373.

¶17 One such exception is the "protective sweep," which is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." ***State v. Sanders***, 2008 WI 85, ¶32, 311 Wis. 2d 257, 752 N.W.2d 713 (quoting ***Maryland v. Buie***, 494 U.S. 325, 327 (1990)). Police officers are justified in performing a protective sweep when they possess "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer[s] in

believing that the area swept harbored an individual posing a danger to the officer[s] or others." *Id.*

¶18 This "warrantless police entry and search of a private residence is valid 'where the government can show both probable cause and exigent circumstances that overcome the individual's right to be free from government interference.'" *State v. Rogers*, 2008 WI App 176, ¶18, 315 Wis. 2d 60, 762 N.W.2d 795 (citation omitted). To establish probable cause, there must be a "fair probability" that criminal evidence will be found in a particular place. *Id.* (citation omitted). To demonstrate exigent circumstances, the State "must objectively show that an 'officer, under the facts as they were known at the time, would reasonably believe that delay in procuring a search warrant would gravely endanger life, risk destruction of evidence, or greatly enhance the likelihood of the suspect's escape.'" *Id.* (citation omitted).

¶19 Gant asserts that the facts in *Rogers* closely mirror this case. In *Rogers*, a search warrant had been issued for the defendant's car based on a tip that he was dealing drugs from the vehicle. *Id.*, ¶¶2-3. Police pulled Rogers over in his vehicle and took him into custody, and his car was searched pursuant to the warrant. *Id.*, ¶¶4-5. However, after observing Rogers' brother and others at the scene making calls on their cell phones, the police determined they should also secure Rogers' residence to "prevent the destruction of evidence" while a warrant for the house was obtained. *Id.*, ¶5. Officers proceeded to do a protective sweep of Rogers' residence while waiting for that warrant. *Id.*, ¶6.

¶20 This court determined that the initial entry and protective sweep of Rogers' residence was unlawful because there were no exigent circumstances that warranted such action. *Id.*, ¶20. Rather, the officers had acted on a "hunch" after

seeing calls being made after Rogers' arrest—that those calls were being made to someone at Rogers' home with a directive to destroy evidence. *Id.* In fact, this court noted that "probably to this day" the officers do not know who was actually being called. *Id.* Therefore, we concluded that this was "not enough information to qualify as exigent circumstances." *Id.*

¶21 Here, the trial court found this case to be factually different from *Rogers*. The court noted that, according to the officer who testified at the suppression hearing, in executing the protective sweep the police were not only concerned with the destruction of evidence from the armed robbery, there were also safety concerns: Gant had been seen running into the house after the robbery, where he had been armed, and even though he had been removed from the house, the gun was still presumably inside, along with an unknown number of people. Therefore, the court did not find this to be an illegal entry.

¶22 Still, Gant asserts that because he was arrested *outside* of his home, officers were not permitted to go *inside* his home to conduct the protective sweep, citing *State v. Sanders*, 2008 WI 85, ¶32, 311 Wis. 2d 257, 752 N.W.2d 713 ("The protective sweep doctrine applies once law enforcement officers are *inside an area*, including a home." (Emphasis added)). However, even if we were to assume, without deciding, that there were no exigent circumstances warranting this protective sweep, the evidence need not be suppressed because the connection between any "illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint." *See Rogers*, 315 Wis. 2d 60, ¶21 (citations and internal quotation marks omitted). There are three factors that are to be considered for making the determination regarding whether there is sufficient attenuation between illegal police conduct and seized evidence: "(1) the temporal

proximity of the unlawful entry to the search, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." ***Id.***

¶23 An important fact in this case—as it was in ***Rogers***—is that when the police "have an 'independent source' for their discovery, such as a warrant based on wholly unconnected information, the evidence seized is not to be excluded." ***Id.*** (citation omitted). Here, at the time of the protective sweep, the police were already in the process of obtaining the search warrant for Gant's residence based on the information they acquired from their investigation of the armed robbery at the gas station. Furthermore, there were also intervening circumstances, such as the fact that Gant had entered the residence with a gun and come out without it, and that there were an unknown number of people still inside the house. Moreover, the record does not indicate that there was purposeful and flagrant misconduct on the part of the officers who conducted the protective sweep: the subsequent search of Gant's home pursuant to the warrant was not "conducted as a result of the illegal entry"; the protective sweep was not "just a pretext for a search for contraband"; and the police did not "use[] information from the illegal entry to obtain the search warrant[.]" *See **id.***, ¶22.

¶24 Thus, we conclude the search subsequent to the search warrant was sufficiently attenuated from any assumed illegal entry by the police, such that suppression of the evidence obtained is not necessary or required. *See **id.***, ¶21. Therefore, the trial court did not err in denying Gant's motion to suppress the evidence—the firearms—that were discovered at his residence pursuant to the search warrant.

*Plea Withdrawal*

¶25 We next address Gant's argument that he is entitled to plea withdrawal. Gant claims that a factual basis was not established by the trial court during the plea colloquy for three out of the four counts of felony intimidation of a witness, because the complaint used by the court for its factual basis only contained facts regarding one call to M.S.

¶26 Before the trial court accepts a guilty or no contest plea, it must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted" and "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." WIS. STAT. § 971.08(1) (2019-20).[2] This is a "mandatory requirement" which the trial court undertakes with the defendant, through a personal colloquy, to "ascertain his [or her] understanding of the nature of the charge[.]" *State v. Bangert*, 131 Wis. 2d 246, 260, 389 N.W.2d 12 (1986). A plea is not considered to be voluntary "unless the defendant has a full understanding of the charges against him [or her]." *Id.* at 257.

¶27 In seeking plea withdrawal after sentencing, a defendant "must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). One way to establish a manifest

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

injustice is to show that the plea was not knowingly, intelligently, and voluntarily entered. *Id.* For such a claim to be successful, the defendant

> must (1) make a prima facie showing of a violation of WIS. STAT. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing.

*Id.*, ¶39.

¶28    When reviewing a motion to withdraw a plea based on whether there was a factual basis underlying the guilty plea, the court may look at the "totality of the circumstances[.]"  *State v. Thomas*, 2000 WI 13, ¶18, 232 Wis. 2d 714, 605 N.W.2d 836.  The totality of the circumstances "includes the plea hearing record, the sentencing hearing record, as well the defense counsel's statements concerning the factual basis presented by the [S]tate, among other portions of the record."  *Id.* Whether a defendant has demonstrated deficiencies in the plea colloquy that establish a violation of WIS. STAT. § 971.08, or "has sufficiently alleged that he [or she] did not know or understand information that should have been provided at the plea hearing," are questions of law that we review *de novo.*  *Brown*, 293 Wis. 2d 594, ¶21.

¶29    Here, the State concedes that Gant admitted to only the facts in the complaint, and that the complaint contained a sufficient factual basis for only the first count of felony intimidation of a witness.  However, the State argues that the complaint also contained facts relating to the other three counts—that M.S. received multiple phone calls from Gant—which were later charged in an amended information.  Furthermore, during the plea colloquy, the trial court went over the details of the allegations for all of the counts, as well as the elements of those crimes.

In response, Gant confirmed that he was admitting to all those elements, and that he was pleading guilty because he was actually guilty. Further details regarding the facts on which all four counts were based were provided by the State at the sentencing hearing. Additionally, Gant again admitted during his allocution at sentencing that he had made several calls to M.S.

¶30 Moreover, Gant has not alleged that he "did not know or understand the information that [the court] should have … provided at the plea hearing" regarding the other three counts of felony intimidation of a witness. *See id.*, ¶39. Therefore, based on the totality of the circumstances as set forth in the record, we conclude that Gant has not presented a prima facie case that warrants plea withdrawal. *See Thomas*, 232 Wis. 2d 714, ¶18. As a result, the trial court did not err in denying Gant's postconviction motion. Accordingly, we affirm the judgments and order of the trial court.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.