# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2866
_____

United States of America

*Plaintiff - Appellee*

v.

Mario Darnell Smith

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 18, 2013
Filed: June 6, 2013

_____

Before BYE and MELLOY, Circuit Judges, and KOPF,[1] District Judge.

_____

MELLOY, Circuit Judge.

Appellant Mario Darnell Smith entered a conditional guilty plea to one count of bank fraud in violation of 18 U.S.C. § 1344, three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and one count of conspiracy in violation

_____

[1]The Honorable Richard G. Kopf, United States District Court for the District of Nebraska, sitting by designation.

of 18 U.S.C. § 371. He now appeals the district court's[2] denial of his motion to suppress. For the following reasons, we affirm.

Background

In May 2011, an individual posing as an AmerenUE employee started contacting U.S. Bank. The individual attempted to set up a "cash vault delivery" from an AmerenUE account at U.S. Bank. Cash vault delivery is a service that allows authorized customers to select locations for cash deliveries. The individual made all of his attempts either over the telephone or through e-mail, using fake e-mail accounts and Internet domain names in an attempt to impersonate an AmerenUE employee. AmerenUE and U.S. Bank employees learned of the scheme and notified the Federal Bureau of Investigation (FBI).

FBI Special Agent Brian Jackson was assigned to the case. He began his investigation by consulting with Special Agent Lyonel Myrthil, the bank crimes coordinator in the FBI's St. Louis office. Special Agent Myrthil informed Special Agent Jackson that he had heard of a similar scheme in Los Angeles that may have involved Mario Smith, who had since relocated to St. Louis.[3] Smith was on supervised release in St. Louis for being a felon in possession of a firearm and had previously been convicted of fraud.

Special Agent Jackson learned that most of the e-mails sent as part of the present scheme were sent from free, publicly available wireless access points. One

---

[2] The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri, adopting the Report and Recommendation of the Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

[3] No charges were brought for the scheme in Los Angeles. During a suppression hearing in the present case, Special Agent Myrthil testified that the investigation in Los Angeles may have involved an unconstitutional search.

access point was traced to a house across the street from Smith's residence. The wireless router at the house across the street was unprotected and anyone within range could use that access point.

U.S. Bank provided Special Agent Jackson with the cash vault questionnaires that the individual behind the scheme completed to obtain the cash vault delivery. By analyzing the documents' data, Special Agent Jackson was able to learn that the username of the individual who completed the questionnaire was "bigdaddyallday." Special Agent Jackson conducted an Internet search for "bigdaddyallday" and discovered a YouTube account under that name. Smith was in several videos and photographs belonging to this account. Also, the investigation revealed that one of the cash vault delivery requests was made for pick-up in the Chicago area. On June 15, 2011, Smith requested permission from his probation officer to travel to Illinois.[4]

U.S. Bank also provided Special Agent Jackson with a recording of a phone conversation between a bank employee and the individual posing as an AmerenUE employee. Special Agent Myrthil identified the voice as Smith's. Special Agent Myrthil had listened to a televised interview with Smith and also had spoken with Smith and listened to Smith's voice on multiple other occasions.

After learning the above information, on June 20, 2011, the FBI placed Smith under surveillance. That morning, an individual authorities suspected was Smith called U.S. Bank, and while impersonating an AmerenUE employee, requested a cash vault delivery of approximately $180,000. During surveillance, agents observed Smith drive, along with Sahib Lewis, to Smith's residence and pick up a messenger bag. Smith and Lewis then drove to a Quizno's restaurant in downtown St. Louis. Agents entered Quizno's to arrest Smith, but he was in the restroom. Agents arrested

---

[4]However, Smith also had a scheduled court appearance in Illinois for the same day as the scheduled pick-up.

Smith once he exited the restroom. Smith was uncooperative during arrest, refusing to place his hands in the view of the officers or sit down. The agents were aware that Smith had a history of resisting arrest.

Agents seized the messenger bag, which was roughly 15 to 20 feet away from Smith at a table with Lewis. While Smith was being handcuffed, he repeatedly told Lewis to take the bag. During Smith's arrest, Lewis was detained, but unrestrained, and could reach the bag. Special Agent Myrthil later stated he believed seizure of the bag was necessary for officer safety. Further, judging by the size and shape of the bag, agents believed the bag contained a laptop. The agents believed that a laptop had been used in furtherance of the scheme because of the use of wireless access points to connect to the Internet. Special Agent Myrthil seized the bag and immediately after touching the bag could feel a laptop inside. Agents did not know whether the bag contained any weapons. Agents also seized three cell phones that were on Smith at the time of arrest.

Agents then took the bag to the FBI office in St. Louis, where Detective Brian Mize inventoried the bag. Detective Mize discovered a laptop, a fourth cell phone, and bank records during the inventory. Agents then interviewed Smith after a valid Miranda waiver. Smith admitted to his involvement in the scheme.

Special Agent Jackson then placed the four cell phones and the laptop in a "Faraday" bag to prevent remote access so the phone could not be remotely wiped. Special Agent Jackson also placed the phones in "airplane mode" to preserve battery life. He created an inventory list, but the list did not detail which cell phones were found on Smith's person and which were found in the bag. Special Agent Jackson obtained a search warrant for the bag, laptop, and four cell phones.

Smith requested a Franks hearing to challenge the validity of the search warrant. The magistrate judge denied the request. Smith also filed a motion to

suppress, challenging his arrest, the search and seizure of his bag, and the admissibility of all evidence obtained as a result of the arrest, search, and seizure. The district court denied the motion. Smith then entered a conditional guilty plea to the counts listed above. Smith now appeals the denial of his motion to suppress.

Discussion

"In an appeal from a district court's denial of a motion to suppress evidence, this [C]ourt reviews factual findings for clear error, and questions of constitutional law *de novo*." United States v. Hollins, 685 F.3d 703, 705 (8th Cir. 2012). "We will affirm the denial of a suppression motion unless we find that the decision is unsupported by the evidence, based on an erroneous view of the law, or the Court is left with a firm conviction that a mistake has been made." United States v. Riley, 684 F.3d 758, 762 (8th Cir. 2012) (internal quotation marks omitted).

I.      Probable Cause to Arrest

First, Smith argues that his arrest was not supported by probable cause, and therefore any evidence obtained as a result of the arrest is inadmissible under the exclusionary rule. Smith claims probable cause did not exist because agents learned of his identity based upon information obtained from an allegedly illegal search in Los Angeles. Further, Smith argues that the agents' voice identification, the connection to the "bigdaddyallday" account, and the wireless access point near Smith's home are insufficient to establish probable cause.

"Probable cause to arrest exists when there is a reasonable ground for belief of guilt that is particularized with respect to the person to be searched or seized." United States v. Chauncey, 420 F.3d 864, 870 (8th Cir. 2005) (internal citations and quotation marks omitted). Whether probable cause exists is "viewed from the standpoint of an objectively reasonable police officer." Ornelas v. United States, 517 U.S. 690, 696

(1996). "[W]e consider whether the facts and circumstances are sufficient to warrant a man of reasonable caution in the belief that [the person] was involved in the commission of a crime." Chauncey, 420 F.3d at 870 (internal quotation marks omitted). "A probability or substantial chance of criminal activity, rather than an actual showing of criminal activity is sufficient." United States v. Jones, 535 F.3d 886, 890 (8th Cir. 2008) (internal quotation marks omitted).

The district court properly found that the agents had probable cause to arrest Smith. First, the agents knew that Smith was a suspect in a similar scheme conducted in Los Angeles. Further, Special Agents Jackson and Myrthil identified the voice of the individual calling U.S. Bank to set up the scheme as Smith's, and the district court's crediting of that identification was not clearly erroneous. See United States v. Kirk, 534 F.2d 1262, 1277 (8th Cir. 1976) ("Voice identification is not a subject of expert testimony. The standards for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." (internal citation and quotation marks omitted)). One of the documents sent to U.S. Bank to further the scheme was created by the user name "bigdaddyallday," which was also the name of a YouTube account featuring photographs and videos of Smith. All of the e-mails sent in an attempt to obtain a cash vault delivery were sent from various wireless access points—including an access point across the street from Smith's residence—which indicated that the scheme was completed using a laptop. Finally, on the date of his arrest, an individual agents believed was Smith contacted U.S. Bank requesting a cash vault delivery, and Smith was seen traveling with a laptop bag. Considering all of the facts laid out above, a "substantial chance" of criminal activity existed. Jones, 535 F.3d at 890.

Further, we reject Smith's argument that the evidence that established probable cause was fruit of the poisonous tree from the allegedly illegal search in Los Angeles. Even assuming the Los Angeles investigation involved an illegal search, probable

cause still existed in this case because of the attenuation doctrine.  As this Court has stated:

> The attenuation doctrine is a well-established exception to the exclusionary rule.  A mere causal connection between information gathered during an illegal search and evidence prepared for trial does not require automatic exclusion of evidence.  "Such connection may have become so attenuated as to dissipate the taint."  Nardone v. United States, 308 U.S. 338, 341 (1939).  Moreover, in determining whether exclusion is proper, the court does not simply inquire whether the evidence would have been discovered "but for" the illegal conduct.  "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"  Wong Sun v. United States, 371 U.S. 471, 487–88 (1963) (quoting Maguire, Evidence of Guilt 221 (1959)).  The mere fact that information gained during an illegal search gives rise to a subsequent, separate investigation of an individual does not necessarily taint the later investigation. . . . Furthermore, if the information merely facilitates or shortens the subsequent investigation, it does not taint the investigation's results.

United States v. Watson, 950 F.2d 505, 507–08 (8th Cir. 1991).

In Watson, officers searched a defendant's house on a warrant authorizing a search for drugs and illegal weapons.  Id. at 506.  During the search, officers photographed or copied down information about the defendant's bank accounts—which the Court assumed was an illegal search.  Id. at 506, 507.  Later, a grand jury charged the defendant for various violations of currency-transaction reporting requirements under 31 U.S.C. §§ 5324(2), 5322(b).  Id. at 506–07.  The only information used from the search to indict the defendant was his name, his alias, and the names of various banks at which the defendant had accounts.  Id.  The defendant moved to suppress "all documents and testimony concerning his deposits and

withdrawals of currency in various financial institutions," claiming the evidence was poisonous fruit of the illegal search. Id. at 507.

The Court upheld a denial of the suppression motion, finding "that where a law enforcement officer merely recommends investigation of a particular individual based on suspicions arising serendipitously from an illegal search, the causal connection is sufficiently attenuated so as to purge the later investigation of any taint from the original illegality." Id. at 508. The Court determined that "[a] contrary conclusion would amount to granting the suspect life-long immunity from investigation and prosecution" and that "[i]n such situations, the societal cost of imposing the exclusionary rule outweighs any deterrent effect." Id. (internal citation and quotation marks omitted).

Therefore, even assuming agents learned of Smith's potential involvement in a similar scheme in Los Angeles through an illegal search, the evidence is not fruit of the poisonous tree. Similar to the actions of the agents in Watson, Special Agent Myrthil simply provided Special Agent Jackson with Smith's name.

II.     Seizure and Inventory Search of Bag

Smith also alleges that, even if the arrest was supported by probable cause, the bag was illegally seized and searched such that the bag and its contents should have been deemed inadmissible. We find that the seizure of the bag was justified in order to preserve evidence. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the [Supreme] Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other

recognized exception to the warrant requirement is present." United States v. Place, 462 U.S. 696, 701 (1983). "[U]nder these circumstances, the risk of the item's disappearance or use for its intended purpose before a warrant may be obtained outweighs the interest in possession." Id. at 701–02. For example, in United States v. Clutter, we upheld the seizure of a defendant's computers on multiple grounds, including because officers "had probable cause to believe the computers contained evidence of child pornography offenses." 674 F.3d 980, 985 (8th Cir. 2012). We reasoned that the seizure was necessary "'to ensure that the hard drive was not tampered with before a warrant was obtained.'" Id. (quoting United States v. Mitchell, 565 F.3d 1347, 1350 (11th Cir. 2009)).

The district court properly determined that the agents in the current case had probable cause to believe that the laptop bag contained evidence of a crime. Every agent, and the district court, agreed that the bag looked like one used to transport a laptop. As discussed, agents determined that because e-mails were sent from various access points, a laptop likely was used to further the scheme. Also, the documents were made under username "bigdaddyallday," a name linked to Smith. Further, as in Clutter, immediate seizure was necessary to prevent destruction of evidence. Smith's statements to Lewis to take the bag illustrate that he was attempting to keep the bag from the agents. See United States v. Beasley, 688 F.3d 523, 530 (8th Cir. 2012) (probable cause existed to justify temporary seizure of evidence where defendant made "apparent efforts to conceal the property").

Next, Smith argues that the search of the bag at the station before obtaining a warrant violated the Fourth Amendment. Smith claims the search was not a valid inventory search because the agent deviated from FBI inventory policy. "We . . . review the district court's findings of fact regarding the circumstances of an inventory search for clear error, including the question of pretext." United States v. Taylor, 636 F.3d 461, 463–64 (8th Cir. 2011) (internal citation omitted).

Inventory searches are one exception to the general rule that searches conducted without a warrant are unreasonable. Id. at 464. The purpose of an inventory search is to protect the "owner's property while it remains in police custody," as well as to protect "police against claims or disputes over lost or stolen property" and "from potential danger[s]." South Dakota v. Opperman, 428 U.S. 364, 369 (1976). An inventory search must "be reasonable under the totality of the circumstances . . . and may not be a ruse for general rummaging in order to discover incriminating evidence." Taylor, 636 F.3d at 464 (internal quotation marks omitted). "The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime." Id. (internal quotation marks omitted). However, "inventory searches need not be conducted in a totally mechanical, all or nothing fashion." United States v. Garreau, 658 F.3d 854, 858 (8th Cir. 2011) (internal quotation marks omitted). And, "[e]ven when law enforcement fails to conduct a search according to standardized procedures, this does not mandate the suppression of the evidence discovered as a result of the search." United States v. Rowland, 341 F.3d 774, 780 (8th Cir. 2003). "There must be something else; something to suggest the police raised 'the inventory-search banner in an after-the-fact attempt to justify' a simple investigatory search for incriminating evidence." Id. (quoting United States v. Marshall, 986 F.2d 1171, 1175 (8th Cir. 1993)).

The district court did not clearly err when determining that the inventory search was not merely a pretext to search for evidence. The district court credited Detective Mize's testimony that he complied with FBI policy when conducting the inventory search. Detective Mize stated he "ruffled" through documents, only attempting to look for valuable or dangerous items. We agree with the district court that it was reasonable for agents to place cell phones in "airplane mode" and to store the electronics in the protective bag. Further, minor deviations from procedure, such as failing to indicate which cell phone was found in the bag and which cell phones were

found on Smith's person, do not invalidate the inventory search.  See Garreau, 658 F.3d at 858.

III.    Validity of the Warrant

Smith argues that the evidence revealed from the post-warrant search of the laptop bag and its contents must be suppressed under Franks v. Delaware, 438 U.S. 154 (1978), because the affidavit in support of the warrant contained material and misleading statements.  "To prevail on a Franks challenge, a defendant must show the following: (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and (2) the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented."  United States v. Cowling, 648 F.3d 690, 695 (8th Cir. 2011) (internal quotation marks omitted).  "Allegations of negligence or innocent mistake are insufficient."  Franks, 438 U.S. at 171.

Smith claims the following statements and omissions invalidate the search warrant: 1) failing to explain that agents initially learned of Smith's identity from the Los Angeles investigation, 2) failing to include that Smith was traveling to Illinois—the location of a cash vault delivery request—for a court hearing, 3) stating that all four cell phones and the laptop bag were in Smith's possession at the time of the arrest, and 4) implying that the cell phone used to call U.S. Bank was found on Smith's person at the time of his arrest, when it may have been found in his bag.  The district court held that any allegedly false statement or omission was not intentionally or recklessly made.  Further, the court held that there was "very little, if anything, misleading in the affidavit in any respect."  After analyzing the record, we believe the district court's findings regarding the statements in the warrant are not clearly

erroneous.  See United States v. Puckett, 466 F.3d 626, 629 (8th Cir. 2006) (standard of review).[5]

## Conclusion

For the foregoing reasons, we affirm.

_____

[5]Because we have determined that Smith's arrest, the search and seizure of his bag, and the warrant were all valid, Smith's argument that all later obtained evidence must be suppressed as fruit of the poisonous tree is without merit.