# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-3555
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Ryan Nevatt

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 14, 2020
Filed: June 1, 2020
[Published]

_____

Before SMITH, Chief Judge, COLLOTON and STRAS, Circuit Judges.

_____

PER CURIAM.

A jury convicted Michael Ryan Nevatt of conspiracy to distribute methamphetamine and six related gun and money laundering counts. The district

court[1] sentenced Nevatt to 460 months' imprisonment. On appeal, Nevatt argues that the district court (1) erroneously denied his motion to suppress evidence and (2) imposed a substantively unreasonable sentence. We affirm.

## I. *Background*

In mid-July 2015, Detective Jason Copley of the Springfield, Missouri Police Department received information through his chain of command that Nevatt was trafficking large amounts of methamphetamine from Texas and Oklahoma to Branson and Springfield, Missouri. Detective Copley conducted a criminal history check on Nevatt and learned that Nevatt had prior felony offenses, including violent offenses.

On July 29, 2015, Detective Copley learned that Nevatt had ridden a motorcycle to Mercy Hospital in Springfield, Missouri. Detective Copley drove to the hospital in an unmarked police car, found Nevatt's motorcycle, and waited for Nevatt to return. Eventually, Nevatt left the hospital carrying a drawstring bag. He drove away on his motorcycle.

Detective Copley followed Nevatt. He noted that Nevatt appeared very uncomfortable operating the motorcycle. Specifically, Nevatt appeared very rigid, was accelerating so slowly that he impeded traffic, and had difficulty maintaining his balance. Detective Copley saw Nevatt violate traffic laws by impeding and obstructing traffic and by failing to maintain his lane. Detective Copley, who had previously worked in a patrol capacity, believed Nevatt to be impaired. Detective Copley's partner called Officer Jim Cooney and asked him to conduct a traffic stop on Nevatt based on the detectives' suspicion that Nevatt was intoxicated or impaired. According to Detective Copley, he had no reason to believe that Nevatt was carrying

---

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

something of evidentiary value on the motorcycle; the only information Detective Copley had was that Nevatt was involved in a drug-trafficking conspiracy.

Officer Cooney stopped Nevatt approximately two miles from the hospital. Officer Cooney had Nevatt get off the motorcycle. He told Nevatt that he was going to perform a pat-down search. Nevatt consented. Officer Cooney then asked for Nevatt's consent to search the motorcycle, but Nevatt declined consent. Officer Cooney informed Nevatt that he stopped him based on another officer's observations of Nevatt's possible impairment while driving. Nevatt admitted his driving was not perfect, but he attributed it to his being a novice rider who had not mastered operation of his recently purchased motorcycle. Officer Cooney administered a field sobriety test. Based on Nevatt's performance and Officer Cooney's interaction with Nevatt, Officer Cooney determined that Nevatt was not impaired.

Officer Cooney conducted a records check on Nevatt. Nevatt had a valid driver's license, but he did not have a proper endorsement for driving a motorcycle or insurance for the motorcycle under Missouri law. Officer Cooney cited Nevatt for not having a motorcycle endorsement. Officer Cooney gave Nevatt a verbal warning for not having insurance.

Officer Cooney decided to tow Nevatt's motorcycle because (1) Nevatt was not insured to operate the motorcycle; (2) Nevatt was not under arrest and therefore would continue to have access to the motorcycle despite his lack of insurance; and (3) the motorcycle remained in the street, where it created a safety hazard. Officer Cooney also noted that Nevatt admitted he could not safely operate the motorcycle. Officer Cooney did not consult with the detectives about his decision to tow the motorcycle; he explained, "Because at that point it was my traffic stop and, you know, that was—they had their side of it and then I had my obligations and the side of my stop." R. & R. at 4, ¶ 7, *United States v. Nevatt*, No. 4:16-cr-00150-DGK (W.D. Mo. Mar. 8, 2018), ECF No. 445 (internal quotation omitted).

At the time of the traffic stop, the Springfield Police Department Standard Operating Guideline ("Guideline") governed custody and non-custody tows. The Guideline defined "[c]ustody [t]ow" as including a vehicle "[o]rdered removed by the Police Department or other authorized agent of the City because of a violation of law." Ex. A at 1, *United States v. Nevatt*, No. 4:16-cr-00150-DGK (W.D. Mo. Dec. 27, 2017), ECF No. 381-1. The Guideline directed that "[o]fficers . . . may immediately tow a vehicle from the public right-of-way or City-owned property . . . [w]hen the vehicle creates a safety hazard." *Id.* at 4. The Guideline advised that "[w]hen Custody Towing a vehicle, personnel shall complete a Tow Report (Missouri Department of Revenue Crime Inquiry and Inspection Report / Authorization to Tow, DOR Form # 4569) which shall serve as the written record of all vehicles towed at the direction of police personnel." *Id.* at 2–3. The Tow Report's "inventory section must be completed in all cases," and "[a]ll property with an estimated value of $25 or more shall be documented." *Id.* at 3.

Officer Cooney inventoried the property found on the motorcycle. The motorcycle was equipped with a saddlebag. Inside the saddlebag, Officer Cooney found two cell phones, a drawstring-type bag containing a GoPro camera, a tablet, and a plastic bag containing a large amount of cash. Officer Cooney seized the property as evidence.

After Officer Cooney discovered the money, he asked Nevatt if it belonged to him. According to Officer Cooney, he questioned Nevatt about the money in "relat[ion] to towing and inventory" to "establish[] ownership of items." Suppression Hr'g at 62, *United States v. Nevatt*, No. 4:16-cr-00150-DGK (W.D. Mo. Feb. 9, 2018), ECF No. 428. Nevatt "denied knowing it was in there," "denied ownership of it," and "denied knowing how much it was." *Id.* at 61–62. Officer Cooney also asked Nevatt, "[H]ow do you not know this large amount of many bundles of 20s and 100s is in this motorcycle that you're driving around[?]" *Id.* at 62. Nevatt replied that he wanted his lawyer. Officer Cooney asked no more questions.

Officer Cooney notified the detectives of the results of the inventory search. Detective Copley's partner went to the site of the traffic stop to retrieve the items. He advised Nevatt that he was going to take the money and the electronic items as part of an ongoing investigation.

Officer Cooney did not fill out the Tow Report's inventory section. Detective Copley explained that "[t]hose items were initially located during an inventory and later logged as evidence. They weren't going to be left with the motorcycle, therefore, they weren't logged as an inventory." *Id.* at 40. According to Officer Cooney, the inventory sheet contains only items that are left with the vehicle during the tow to prevent claims against the police and the tow company while the vehicle is stored. Items seized as evidence, Officer Cooney noted, are included in a police report under the property tab section instead of the inventory section. Indeed, the police report documented Nevatt's seized items. The tow sheet was included as part of the police report.

After Officer Cooney ticketed Nevatt, the tow service arrived to take the motorcycle. Nevatt requested to take the money with him. Officer Cooney told him no and that he needed to leave. Nevatt left.

Detective Copley used the information obtained from the traffic stop in an affidavit to obtain search warrants for the devices found in Nevatt's bag during the traffic stop and a search warrant for Nevatt's hotel room. The subsequent search of Nevatt's hotel room uncovered a large sum of U.S. currency, controlled substances, cell phones, tablets, and a firearm, which the officers seized.

Ultimately, Nevatt was charged in a seven-count superseding indictment with conspiracy to distribute 500 grams or more of methamphetamine ("Count 1"); conspiracy to carry, use, and possess various firearms in furtherance of the conspiracy to distribute methamphetamine ("Count 2"); possession of firearms in furtherance of

a drug trafficking crime ("Count 3"); conspiracy to commit money laundering ("Count 4"); engaging in monetary transactions in property derived from specified unlawful activity ("Counts 5 and 6"); and laundering of monetary instruments ("Count 7").

Nevatt moved to suppress the evidence. The magistrate judge held a hearing, made factual findings, and recommended denial of the motion. The district court overruled Nevatt's objections and adopted the magistrate judge's report and recommendation, denying the motion.

A jury found Nevatt guilty on all seven counts. A presentence investigation report (PSR) calculated a Guidelines range of life imprisonment, plus a mandatory 60 months consecutive on Count 3, based on a total offense level of 50 (reduced to the maximum of 43) and a criminal history category of V. The district court imposed a below-Guidelines sentence of 460 months' imprisonment: 360 months' imprisonment on Count 1; 20 years on each of Counts 2, 4, 5, 6, and 7, to be served concurrently; and 100 months' imprisonment on Count 3, to be served consecutively.

## II. *Discussion*

On appeal, Nevatt argues that the district court (1) erroneously denied his motion to suppress evidence and (2) imposed a substantively unreasonable sentence.

## A. *Motion to Suppress*

Nevatt argues that the inventory search was merely a pretext to search for incriminating evidence. Nevatt further asserts that "Officer Cooney did not impound the vehicle pursuant to law enforcement's legitimate community caretaking or public safety functions." Appellant's Br. at 10. He maintains that his "motorcycle was lawfully parked alongside the road," "did not present a hazard to other drivers at that location[,] and did not jeopardize public safety in any way." *Id.* He also seeks

suppression of the evidence seized from his hotel room as fruit of the poisonous tree stemming from the illegal motorcycle impoundment and search.

"Reviewing the denial of a motion to suppress, this court reviews 'legal conclusions de novo and factual findings for clear error.'" *United States v. Morris*, 915 F.3d 552, 555 (8th Cir. 2019) (quoting *United States v. Woods*, 747 F.3d 552, 555 (8th Cir. 2014)). "We . . . review the district court's findings of fact regarding the circumstances of an inventory search for clear error, including the question of pretext." *United States v. Taylor*, 636 F.3d 461, 463–64 (8th Cir. 2011) (internal citation omitted). "A credibility determination made by a district court after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." *Morris*, 915 F.3d at 555 (quoting *United States v. Frencher*, 503 F.3d 701, 701 (8th Cir. 2007)).

The general rule is that a search conducted without a warrant is unreasonable; however, inventory searches are one exception to that rule. *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013). "The purpose of an inventory search is to protect the owner's property while it remains in police custody, as well as to protect police against claims or disputes over lost or stolen property and from potential dangers." *Id.* (cleaned up). "An inventory search must be reasonable under the totality of the circumstances"; therefore, law enforcement may not use an inventory search as "a ruse for general rummaging in order to discover incriminating evidence." *Id.* (internal quotation omitted). But "[t]he police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." *United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015) (internal quotation omitted).

"The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime." *Smith*, 715 F.3d at 1117 (quoting *Taylor*, 636 F.3d

-7-

at 464). "[W]hen police are conducting inventory searches according to such standardized policies, they may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." *Harris*, 795 F.3d at 822 (internal quotation omitted).

We have recognized that "inventory searches need not be conducted in a totally mechanical, all or nothing fashion." *Smith*, 715 F.3d at 1117 (internal quotation omitted). As a result, "[e]ven if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." *Taylor*, 636 F.3d at 465. "There must be something else; something to suggest the police raised the inventory-search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." *Smith*, 715 F.3d at 1117–18 (internal quotations omitted). In other words, "[s]omething else must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching the defendant's vehicle." *Taylor*, 636 F.3d at 465 (internal quotation omitted).

Nevatt first argues that Officer Cooney did not lawfully impound his motorcycle.[2] He asserts that his "motorcycle was lawfully parked alongside the road" and "did not present a hazard to other drivers at that location and did not jeopardize public safety in any way. Nor was the vehicle at risk of being stolen or vandalized." Appellant's Br. at 10.

Officer Cooney testified that the motorcycle was "barely off Jefferson there still in the street." Suppression Hr'g at 54. The district court credited Officer Cooney's testimony that he towed the motorcycle because of Nevatt's lack of insurance, the motorcycle being in the street, Nevatt's access to the motorcycle, and Officer

---

[2]Nevatt does not challenge the lawfulness of the traffic stop.

Cooney's inability to jail Nevatt or separate Nevatt from the motorcycle. Officer Cooney explained that he towed Nevatt's motorcycle based on

> all the contributing factors that I previously expressed, for him *having no endorsement*, him admitting that *he can't safely operate the motorcycle* because he's just learned on or just bought it and hasn't officially learned on it yet. Him also *not having any proof of insurance* and the *motorcycle being still in the street* where him not going to jail, he technically has access to it and it *creates a safety hazard* if we were to just leave and trust that he would not come back to it.

*Id.* at 63–64 (emphases added). Officer Cooney confirmed that he did not "consult with Copley or [Detective Copley's partner] about that decision" "[b]ecause at that point it was my traffic stop and, you know, that was—they had their side of it and then I had my obligations and the side of my stop." *Id.* at 57.

The district court did not clearly err when it credited Officer Cooney's testimony. Based on that testimony, a lawful basis existed for the impoundment of Nevatt's motorcycle. "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976); *see also Harris*, 795 F.3d at 823. Officer Cooney testified that the motorcycle was "in the street" and "create[d] a safety hazard." Suppression Hr'g at 64. Nevatt could not lawfully remove it because he lacked insurance.

The next question is whether Officer Cooney complied with the Springfield Police Department's inventory search policy. The district court concluded "that the inventory search of the motorcycle was conducted pursuant to standardized police procedures." R. & R. at 10.

"Even if [Officer Cooney] fail[ed] to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." *Taylor*, 636 F.3d at 465. Nevatt argues that the following facts show pretext: the motorcycle was lawfully parked alongside the road, the vehicle was not a hazard to other drivers, the vehicle was not at risk of being stolen or vandalized, he was released at the scene, he was not under the influence, he was not cited for the lack of proper licensing or insurance, and he was not found to have any drugs in his possession. But the district court credited Officer Cooney's version of events. Detective Copley requested that Officer Cooney conduct the traffic stop based on a belief that Nevatt was impaired. Although Nevatt was not impaired, a records check revealed that Nevatt lacked the proper endorsement and had no insurance. Officer Cooney decided to tow the motorcycle because it was in the street and was a safety hazard. Because Nevatt lacked insurance, he could not lawfully drive the motorcycle. Officer Cooney did write Nevatt a citation for operating the motorcycle without the proper license endorsement. Officer Cooney did not consult with the detectives before deciding to have Nevatt's vehicle towed and searched. With these facts, the district court concluded that the inventory search was not a pretext for an investigatory search. We affirm this conclusion.

Accordingly, we hold that the inventory search of Nevatt's motorcycle was lawful; therefore, the district court did not err in denying Nevatt's motion to suppress evidence.

B. *Substantive Reasonableness*

Nevatt argues that his 460-month sentence is substantively unreasonable because the court failed to adequately consider the 18 U.S.C. § 3553(a) factors. He contends that in explaining the sentence, the district court conceded that it disregarded the need to avoid unwarranted sentencing disparity. Additionally, he asserts that the district court erroneously failed to consider mitigating factors raised

in the PSR and in his sentencing memorandum, including his significant mental health and emotional issues that have been exacerbated by a history of drug abuse.

Nevatt's Guidelines range was life imprisonment, but the district court sentenced him to 460 months' imprisonment. "[W]hen a district court has sentenced a defendant below the advisory [G]uidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Merrell*, 842 F.3d 577, 585 (8th Cir. 2016) (internal quotation omitted). The record shows that the district court discussed the § 3553(a) factors. As to the need to avoid unwarranted sentencing disparity, the district court did not disregard it, but it instead accorded it little weight in relation to other factors, including Nevatt's criminality. "The court's emphasis on the defendant's criminal history and the nature of the offense falls within a sentencing court's substantial latitude to determine how much weight to give the various factors under § 3553(a)." *United States v. Timberlake*, 679 F.3d 1008, 1012 (8th Cir. 2012) (internal quotation omitted). Furthermore, while the district court did not expressly discuss Nevatt's mental health and emotional issues as mitigating factors, the court indicated that it had reviewed Nevatt's sentencing memorandum that identified these mitigating factors. "Because these mitigating factors were presented both in his sentencing memorandum and in his arguments at the sentencing hearing, we may presume that the court considered them and found them unpersuasive." *United States v. Hager*, 768 F. App'x 583, 585 (8th Cir. 2019) (per curiam) (citing *Timberlake*, 679 F.3d at 1012). Nevatt "has failed to establish that [his] is the rare case in which a decision not to vary further amounted to an abuse of discretion." *Merrell*, 842 F.3d at 585.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____